## Max Levinson, Appellee, v. Spector Motor Service, Appellant.

### Gen. No. 42,651.

Opinion filed June 30, 1944. Rehearing denied July 25, 1944.

GOLDEN & GOLDEN, of Chicago, for appellant.

YALE & YALE, of Chicago, for appellee; HARRY L. YALE, of Chicago, of counsel.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an action brought by virtue of section 16 (b), for violation of the maximum hours provision (section 7), of the Fair Labor Standards Act of 1938 (52 U. S. Stats. 1060), designed to spread employment and maintain health. *Southland Gasoline Co. v. Bayley, et al,* 6 Labor Cases, 51159. Judgment was for plaintiff in the amount of $1,149.88. Defendant has appealed.

Defendant is a Missouri corporation, licensed in Illinois and engaged in interstate commerce as a motor carrier of freight, by which plaintiff was em-

ployed from October 1, 1939 to October 6, 1941. He claims that he worked 87 hours per week for the period from October 1, 1940 to October 6, 1941, during which defendant violated section 7 of the Act by refusing to pay him time and a half for all hours in excess of 42 hours per week during the period from October 1, to October 24, 1940; and for all hours in excess of 40 hours per week from October 25, 1940 to October 6, 1941, less one week's vacation. The maximum working hours are established in section 7 (a), (1), (2) and (3) of the Act.

Defendant's affirmative defense is that the nature of plaintiff's employment, exempted him from the provisions of the Act, (section 13) and brought him under the exclusive jurisdiction of the Interstate Commerce Commission, since his duties were those of "dock man," "loader" and "dock foreman" and directly connected with the safety of equipment and cargo in Interstate Commerce.

The trial court found in its judgment order entered December 28, 1942, that the plaintiff worked 87 hours per week during the period for which the suit was brought and that the *major portion* of the work performed by him during that period did not affect the safety of defendant's operations and that plaintiff was not exempted from the provisions of the Act. The defendant argues that the finding that the plaintiff is not exempted is erroneous as a matter of law and is against the manifest weight of the evidence; and also that the amount of the judgment entered exceeded the court's jurisdiction in plaintiff's fourth class action.

Section 13 (b) exempts from the provisions of section 7 of the Act any employee subject to the jurisdiction of the Interstate Commerce Commission under section 204 of the Motor Carrier Act of 1935 (49 U. S. Stats. 543). That section empowers the Commission to regulate the qualifications and hours of service of employees' whose activities affect the safety of oper-

ation. *United States v. American Trucking Association,* 310 U. S. 534, 553. The decisive question on the merits is whether plaintiff is such an employee.

In the *Trucking Association case,* the court said that "the interpretation of the Interstate Commerce Commission and the Department of Labor are entitled to great weight." In Ex parte No. M. C. –2, Vol. 28 Interstate Commerce Commission Reports, page 125, the Commission interpreted the term "safety of operation" used in that case to include employees who devote a *substantial part* of their time to activities which directly affect safety of operation; that among such employees were "loaders," variously called "loaders, dock men or helpers," who devote a *large* part of their time to activities directly affecting safety of operation and whose sole duties are to *load and unload* motor vehicles, etc. Plaintiff contends he is a checker, not a loader, and therefore, not within the Commission's interpretation. We believe that his duties—not the name given his position—are determinative. To preclude the exemption provided in sec. 13 B of the Act from applying to him, plaintiff relies upon *McKeown v. Southern California Freight Forwarders,* 6 Labor Cases (U. S. District Court, Southern District of California) 61521; *Overnight Motor Transportation Co. v. Missel,* 316 U. S. 572; *Magann v. Longs Baggage Transfer Co.,* 39 Fed. Supp. 742; and mainly upon *Anuchick, et al. v. Trans-American Freight Lines,* 6 Labor Cases (U. S. District Court, Eastern District of South Michigan) No. 61,245. The facts in the first two, place the employee plainly outside the exemption; and in the third, a truck driver was found to be exempt. In the *Anuchick case,* the court found that certain employees devoted a *substantial part* of their time to work not directly affecting safety of operation and, on the theory that it was bound by the Department of Labor's interpretation of the term "substantial" in Bulletin No. 9, gave judgment for the employees. The

interpretation in Bulletin No. 9 then prevailing was that "substantial" meant *in excess of 20%* of duties not connected with *loading and unloading*. Bulletin No. 9, as revised to October 1943, modifies the earlier interpretation to mean "the *greater part* of his time during any work week on non-exempt activities." We assume the court in the *Anuchick case* would have accepted this later interpretation had it then been effective and, unless the employees there spent the *greater part* of their time on duties not directly affecting safety, would have held against them. These various interpretations suggest the difficulty of finding the proper rule here. The trial court apparently applied the later interpretation of the Department of Labor.

Defendant Terminal at 600 West 25th street, Chicago, is the scene of three phases of motor carrier business—inbound freight, outbound freight and local freight. Trucks carrying freight originating locally and in foreign cities and States, are unloaded by gangs of defendant's employees. A gang usually consists of 3 or 4 men—a checker, caller, sorter and packer. The checker directs the gang's operation. Day and night foremen supervise the activities of all the gangs. Incoming freight is unloaded and deposited according to its destination on the dock in various sections at the direction of the checker; likewise under the direction of the checker, it is removed from these sections and loaded on appropriate outgoing trucks. It is loaded according to size and weight; heavy weighted or "bottom freight" being distributed in the lower part of the truck and lighter weighted or "balloon freight" is placed at the top. This plan is followed in the interest of safety of equipment and of freight. Testimony pertinent to the issue on the merits is that, as checker, plaintiff supervised and directed the unloading and disposition of incoming freight and the collecting and

loading of the outgoing freight and that he watched the disposition of the weight of the freight in loading. The dispute in the testimony arises as to the quantity of plaintiff's activities devoted to these particular duties. Plaintiff says that most of the outbound freight was handled at night, while he worked mostly days; that not much loading was done during his hours, but that, whatever took place, was under his direct charge. The defense testimony is that inbound and outbound freight was equally divided during the day—inbound usually during the night and outbound between 8 a. m. and midnight.

We believe none of the foregoing interpretations are helpful in determining this issue. Section 204 of the Motor Carriers Act is designed to provide safety in an efficient motor transportation system. *United States v. American Trucking Association,* 310 U. S. 534. There is no question that some part of plaintiff's work week was devoted to the direction and supervision of the loading of interstate motor freight carriers. There is no question either that the loaders in his gang were exempted from section 7 of the Fair Labor Standards Act. We think, therefore, that with greater force, plaintiff comes within the exemption for, if the loaders are exempt because the manner in which they work affects the safety of the operation of defendant's motor vehicles, certainly the duties of plaintiff, who planned and directed the loading, affect that safety. Considering the purpose of the Motor Carriers Act, we believe that the true determinant is whether an employee performs any duties which substantially affect the safety of operation, rather than whether the duties affecting safety are substantial.

We need consider no other point.

It is our conclusion that the finding that plaintiff is not exempted is erroneous as a matter of law and that the judgment based thereon should be and it

hereby is reversed and the cause is remanded with directions to enter judgment for costs for defendant against plaintiff.

*Judgment reversed and cause remanded with directions to enter judgment for costs for defendant and against plaintiff.*

BURKE, P. J., and LUPE, J., concur.