**YELLOW TRANSIT FREIGHT LINES, INC., a Corporation, Appellant,**

v.

**Curtis BALVEN, Appellee.**

No. 17223.

United States Court of Appeals
Eighth Circuit.

July 10, 1963.

Harold A. Thomas, Jr., of Fordyce, Mayne, Hartman, Renard & Stribling, St. Louis, Mo., for appellant.

William A. Ens, St. Louis, Mo., for appellee.

Before VOGEL, VAN OOSTERHOUT and RIDGE, Circuit Judges.

VOGEL, Circuit Judge.

This action was brought by the plaintiff-appellee, Curtis Balven, against the defendant-appellant, Yellow Transit Freight Lines, Inc., for the recovery of overtime compensation along with liquidated damages and attorney's fees allegedly due him for work performed during the period June 1, 1959, to April 23, 1961. The action is based upon the provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 207(a).[1] The defendant countered the charge by claiming that Balven's job substantially affected the safety operation of over-the-road trucks and that consequently the Interstate Commerce Commission had specific and exclusive authority to regulate Balven's hours of service as provided by Section 213(b) (1) of that Act.[2] The District Court found in favor of the plaintiff. Defendant appealed.

The record indicates the following: Defendant is engaged in the business of transporting freight in interstate commerce. In the latter part of May 1959 Balven applied for work as a dock hand with the defendant. He was so employed by Robert Purvis, assistant terminal manager of the defendant, at a wage of $2.40 an hour. He began work in this capacity on May 24, 1959, but the next day was asked if he wanted to take a job as an assistant dock foreman. Balven testified that Purvis approached him about this position and told him that he was to "work the midnight to eight-thirty shift, and also in relating to this job I would have to come in one hour earlier on Sunday, in order to get the work ready, and also there would be times during vacation when we would have to work extra hours when one of the other men were gone on vacation." Balven accepted the job but continued to work on an hourly wage basis for the balance of May. On June 1, 1959, he went on a monthly salary and continued on such until his employment terminated on April 24, 1961. During this period Balven claimed that he worked a total of 640½ hours in excess of forty hours per week. In addition to the extra hour on Sunday, Balven stated that he worked certain Saturdays and while other foremen were either on vacation or ill. There appears no substantial dispute in the testimony with reference to the hours Balven claims to have worked.

Balven described his duties as follows: When he first came to work he would start with the bills that had been accumulated from previous loads. He would separate the bills according to loads, record the weights from various points, stamp the bills, separate them alphabetically and hand them out to the various dock hands to be delivered to the loading doors. Later he would go to the loading doors, pick up the bills that

1. 29 U.S.C.A. § 207(a) reads as follows:
"Except as otherwise provided in this section, no employer shall employ any of his employees who is engaged in commerce or in the production of goods for commerce for a workweek longer than forty hours, unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."

2. Section 213(b) (1) provides:
"The provisions of section 207 of this title shall not apply with respect to (1) any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49; * * *."

had been loaded, record the weights in each trailer and enter such weights upon a tally or "fly" sheet. He would then go back to the office and further sort bills. He claimed that of his average shift, twelve to eight-thirty, he spent approximately an hour and a half on the dock and the rest of the time in the office.

Balven testified that when he first began working for the defendant he would check for overloading on the trucks only by glancing at the tally sheets to see if it looked as though there were too much weight aboard and if such appeared to be the case, he would total it to make certain. In the middle of 1960, however, he was instructed to total the weights at the 20th, 40th and 60th lines. If at any time he discovered an overload, he reported it to the foreman, who corrected the situation if he felt it necessary. Balven stated that his purpose in checking the bills at dockside was primarily to make certain the proper freight was being loaded on each trailer. In checking for overloading, he was concerned only with the weight on the front and rear half of the truck, and was unable to determine either by the weights as recorded on the tally sheets or by the appearance of the truck itself whether there was improper loading on the sides. Balven's testimony was generally supported by a former dock foreman as to duties and time spent on the dock. Additionally, this witness testified that if a truck were overloaded, such fact would be discovered at the scales and the truck sent back; and that the periodical totalling of the tally sheet was initiated in 1960 to avoid such occurrences.

There was, however, a conflict in the testimony in that the assistant terminal manager, Purvis, said he told Balven he was to work the twelve midnight to eight-thirty a. m. shift plus every third Saturday and when one of the other two foremen was on vacation or sick. He claimed he did not instruct Balven to come in early on Sunday, although he was aware that the latter frequently did so. Purvis described an assistant dock foreman's job as a supervisory posi-tion with indirect authority over the loading operations, and with specific authority to order reloading of trucks. However, the example Purvis gave of the exercise of such authority applied to the reloading of freight placed on the wrong truck. He claimed, however, that the totalling of the tally sheets and checking for overloading did pertain to the safe operation of the trucks and his estimate was that Balven spent from 40% to 50% of his time in connection with such duties. His testimony was generally supported by two other of the defendant's employees. One of these witnesses stated that improper loading on the sides of the truck would affect the safety of operation but that overloading in the front or rear, while illegal, would not have the same effect.

The District Court, trying the case without a jury, made specific findings of fact and conclusions of law. Its conclusions, insofar as they are related to the first alleged error, are as follows:

"3. Defendant, relying upon Sec. 13(b) (1) of the Fair Labor Standards Act claimed plaintiff was exempt from the overtime provisions of the Act in that a substantial part of the duties of plaintiff affected the safety of vehicles in interstate commerce. Since all exemptions are strictly construed, defendant has failed to sustain its burden of proof and failed to establish its position by the required preponderance of evidence.

"4. The title of the job held by plaintiff is not controlling, but the work performed by him is. Plaintiff's work was basically clerical and the reporting of overweight to a dock foreman from figures entered on a fly sheet was a minor part of his duties, and at most, only incidentally related to the safety of vehicles in interstate commerce."

The District Court found that Balven was entitled to compensation in the sum of $2,424.23 but that he had waived any claim in excess of his prayer for damages in the amount of $1,918.26 plus liqui-

dated damages and attorney's fees. Accordingly, judgment was entered in plaintiff's favor in the amount of $1,918.26 plus an equal amount as liquidated damages, together with an attorney's fee.

Defendant asserts that the trial court erred in failing to find as a matter of law that plaintiff's employment affected the safety of motor vehicles operating in interstate commerce and was, therefore, subject to the regulations of the Interstate Commerce Commission rather than the provisions of the Fair Labor Standards Act. In the alternative, defendant also argues that even if the employment were subject to the overtime provisions of the Act, the District Court miscalculated the amount of overtime pay due. In making the latter assertion, defendant contends that the original oral contract of employment contemplated these overtime hours, that they should be included in computing the basic hourly wage, and therefore Balven would be entitled to only one-half time for hours over forty rather than one and one-half times.

In support of its first claim of error, defendant relies most heavily upon Levinson v. Spector Motor Service, 1947, 330 U.S. 649, 67 S.Ct. 931, 91 L.Ed. 1158, in which the Supreme Court stated that there was ample evidence in that case to sustain a finding that the employee was exempt from the provisions of the Fair Labor Standards Act because his direction of loading operations substantially affected the safety of motor carriers. Defendant's argument is that if *any* of Balven's duties affected safety of operation, that Levinson would dictate as a matter of law that he should be exempt from the provisions of the Fair Labor Standards Act. Defendant cites Morris v. McComb, 1947, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44, in which the Supreme Court held certain drivers to be exempt from the provisions of the Act even though only 4% of their duties actually affected motor vehicle safety.

We agree with defendant that if Balven's "dockside" duties substantially affected the safety of operation, that the exemption should apply. In this context, it is wholly immaterial whether those duties consumed an hour and a half, as testified to by Balven and another assistant dock foreman, or 40% to 50% of his time, as claimed by other witnesses, for in any case he would be exempt from the provisions of the Act if they substantially affected the safety of motor vehicles operating in interstate commerce. The factual question to be decided is not whether a substantial part of Balven's duties affected the safety of operation but, rather, whether any of Balven's duties had a *substantial effect* on motor vehicle safety. In Pyramid Motor Freight Corp. v. Ispass, 1947, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184, (decided the same day as Levinson) the Supreme Court stated at pages 707–708 of 330 U.S., at page 960 of 67 S.Ct.:

> " * * * The District Court shall give particular attention to whether or not the activities of the respective respondents included that kind of 'loading' which is held by the Commission to affect safety of operation. In contrast to the loading activities in the Levinson case, the mere handling of freight at a terminal, before or after loading, or even the placing of certain articles of freight on a motor carrier truck may form so trivial, casual or occasional a part of an employee's activities, or his activities may relate only to such articles or to such limited handling of them, that his activities will not come within the kind of 'loading' which is described by the Commission and which, in its opinion, affects safety of operation. * * * "

See also Tobin v. Mason & Dixon Lines, D.C.Tenn.E.D., 1951, 102 F.Supp. 466, 469.

In Levinson, supra, the Supreme Court quotes from Levinson v. Spector Motor Service, 323 Ill.App. 505, 56 N.E.2d 142. The quoted portion appears in a footnote at page 656 of 330 U.S., at page 935

of 67 S.Ct., and reads in part as follows:

"* * * Considering the purpose of the Motor Carriers Act, we believe that the true determinant is whether an employee performs *any* duties which *substantially* affect the safety of operation, rather than whether the duties affecting safety are substantial." (Emphasis supplied.)

While it is true that many of the cases continue to speak of a "substantial part" or "substantial portion", when they are viewed as an entirety it is apparent that the activities must properly be tested as to what they accomplish rather than how much time they may consume.

■ Defendant argues that the District Court, through a misconception of the proper test, concluded that defendant had failed to establish that a "substantial part" of plaintiff's duties affected motor vehicle safety. It should be noted, however, that the finding of the District Court is properly directed to the effect of the duties rather than their duration. Supra conclusion No. 4. It is obvious therefrom that the District Court applied the correct rule and must be affirmed unless its finding is clearly erroneous or without support in the testimony.

Viewing the evidence in the light most favorable to sustaining the trial court's findings, it is established that Balven's authority was limited to making certain the freight was loaded on the proper truck; that he had no knowledge of proper axle loading; that he concerned himself only with the mathematical tabulations to determine if the trucks were overloaded in the front or rear; that even if he did find such an overload, he reported to the foreman, who made the decision whether or not to reload; that any reload in the front or rear would be discovered at the scales and sent back for reloading; that Balven's check was made to prevent the necessity of such reloading; and, finally, that checking for overloading in the front or rear was to prevent illegal loading only. We con-

clude that the District Court's findings are supported by substantial testimony in the record and accordingly affirm as to the first claimed error.

■ Defendant's second claim of error is to the effect that even if the provisions of the Fair Labor Standards Act do apply, the trial court erred as a matter of law in its method of computing the statutory damages. Its contention is that Balven's oral contract of employment called for a variable work week and irregular hours and that figured on such basis, recovery should be limited to $641.96 actual damages rather than $1,918.26 as allowed by the trial court. The question primarily was, what was Balven's work week. The trial court specifically found:

"Plaintiff was employed by Defendant for a forty-one hour work week. During the period June 1, 1959, to October 31, 1959, he worked two hundred and fifty-two hours (252) overtime. During the period from November 1, 1959, to June 30, 1960, plaintiff worked one hundred seventy-nine hours (179) overtime and during the period July 1, 1960, to April 26, 1961, plaintiff worked 209.5 hours overtime, for all of which plaintiff received no additional compensation."

The contract of employment was oral. The testimony regarding its specific provisions was in conflict. Nevertheless, there is substantial support in the testimony of the plaintiff himself plus repeated references to the fact that he was hired to work "the midnight to eight-thirty shift" and "the average shift, twelve to eight-thirty" to support the trial court's finding of a forty-one-hour week. Such determination of a fact question based on substantial evidence may not, of course, be disturbed on appeal.

■■ It should be noted, however, that the trial court, in computing plaintiff's damages, based on a work week of forty-one hours, incorrectly allowed plaintiff time and a half for the forty-

first hour. The hourly rate should have been multiplied by only one-half rather than one and one-half to determine the compensation due for the extra hour worked each Sunday, since Balven had already been compensated on a straight-line basis for the forty-first hour. This error of $235.88, however, will not affect the amount of the judgment entered by the District Court for, as previously pointed out, under its computation plaintiff had established that he was entitled to damages in the amount of $2,424.23 but by his prayer for relief in the amount of $1,918.26 only, he had waived claim to any amount in excess thereof. Accordingly, the correction need not be made.

Affirmed.