Arthur **COLEMAN** et al., Plaintiffs,

v.

**JIFFY JUNE FARMS, INC.,** et al., **Defendants.**

George P. **SHULTZ,** etc., **Plaintiffs,**

v.

**JIFFY JUNE FARMS, INC.,** et al., **Defendants.**

Civ. A. Nos. 5337–69–P, 5342–69–P.

United States District Court,
S. D. Alabama, S. D.
Dec. 28, 1970.

Hayden Rector, Mobile, Ala., Beverley R. Worrell, Regional Sol., U.S. Dept. of Labor, Atlanta, Ga., for plaintiffs.

Willis C. Darby, Jr., Mobile, Ala., for defendants.

## OPINION AND ORDER
## FINDINGS OF FACT

PITTMAN, District Judge.

This is a consolidation of actions, in one case by employees and former employees of the defendants, and in the other case, by the Department of Labor, each seeking overtime pay allegedly due for past services, and an injunction against future violation of Title 29 U.S. C.A. Section 207(a) (1). There is no issue presented with reference to the number of hours, the rates of pay, or that all persons claimed to be due overtime were employees of defendants during the relevant periods of time. The parties have informed the court that they can agree on the amount of overtime due should the court hold that any employees are entitled to overtime pay. The plaintiffs, Coleman, et al., have raised the additional question of liquidated damages and a reasonable attorney's fee. The issue before the court is whether or not the defendants, or either of them, are exempted from the provisions of the Fair Labor Standards Act by virtue of Title 29 U.S.C.A. Section 213(b) (1).

Defendants, in their pretrial response, incorporated within the court's pretrial order, have admitted that defendants, Jiffy June Farms, Inc. and Jiffy Poultry, Inc., are corporations having a place of business in Mobile County, Alabama, and the defendant, Robert A. Trainor, Jr., resides in Mobile County, Alabama. All are within the Southern District of Alabama. The defendants have continuously, since September 1, 1966, engaged in ordering, receiving, processing, delivering, performing related clerical functions, and otherwise handling or working on poultry, eggs and oysters that have been moved in, or produced for, commerce.

At the trial of the case, plaintiffs offered the answers to requests for admissions and the interrogatories propounded by the plaintiffs, the answers thereto by the defendants, and rested. The defendants established that Jiffy June Farms, Inc. is a processing establishment whose principal business is processing chickens, turkeys and eggs. All Jiffy June Farms' sales of finished produce are made to the defendant Jiffy Poultry, Inc. Offal and wastes are sold elsewhere.

Jiffy Poultry, Inc. is a sales and distributing concern. In addition to selling and distributing products of Jiffy June Farms, they make additional purchases from other processors and sell and deliver those products. The ownership of both corporate defendants is substantially the same. The period of time relevant to this suit is April, 1966 to April, 1969 for those employees who have severed their employment with the defendants, and from April, 1966 to the present for those who have continued to be employed by the defendants.

All the processing by the defendant Jiffy June Farms is done in Alabama. The majority of the sales and deliveries by the defendant Jiffy Poultry are made in Alabama. However, during April, 1966, and until April, 1969, the defendant Jiffy Poultry regularly, sometimes two or three times a week, and in most weeks of each month, made small sales and deliveries to South Flomaton, Florida, a rural community on the Alabama-Florida line.

On those deliveries which included the Florida deliveries, the truck usually had deliveries in Alabama before reaching Florida, and/or deliveries again in Alabama after reaching Florida. On occasion, a truck might take a full load to Florida, but, generally, the delivery was a small portion of a truckload. From the evidence, it appears that all, or substantially all, deliveries in the State of Florida were made to South Flomaton, Florida. The deliveries in Florida constitute .23% of all deliveries in the course of defendants' business. It should be noted at this time that defendant employs 67 driver-loaders among whom this infinitesimal interstate traffic is allegedly divided.

The 67 drivers for Jiffy Poultry also served as loaders. All drivers participated in the loading of all trucks. While a particular driver might be ordered to drive a particular truck, that same driver would have assisted in the loading of other trucks. Jiffy Poultry employed no full-time loaders without driving duties. The usual procedure was for invoices representing a load for a particular truck to be given to a driver who would arrange the invoices in a reverse order of consecutive deliveries. The trucks would be loaded with poultry being loaded from the back forward. If the load was mixed, eggs would be loaded to the rear of the truck. The loading was done in such a manner as to minimize shifting and harmful effects on the produce.

The defendant did not operate regular daily or weekly route deliveries, but routes would be organized to minimize travel and according to the most economical make-up of truck loads as dictated by the flow of sales orders. Over a period of time customer orders developed in such a manner that a pattern was discernable. However, no regular truck routes such as those operated by busses or trains were established. The drivers were not assigned a particular truck, nor to particular routes, but would receive their truck and route assignment on the day the trucks left Jiffy Poultry.

Both defendants made out-of-state purchases, but deliveries to Alabama from other states were made by other carriers. Jiffy June Farms purchased fiberboard boxes from International Paper Company which they shipped from South Carolina and Florida to a warehouse in Mobile, Alabama. At that point the defendants' drivers would pick up the boxes and deliver them to the defendants.

The defendant Jiffy Poultry purchased chickens and turkeys from out-

of-state. These were delivered by the sellers, in most instances, to cold storage facilities leased by Jiffy Poultry at the Alabama State Docks. On occasion, Jiffy Poultry would also deliver other products for storage in these facilities, and would pick up products stored there for delivery to other places. Jiffy Poultry has made regular, dockside sales to ships in Mobile for use aboard ship while at sea, and, possibly, for delivery in foreign countries. The evidence is insufficient to determine the quantities of these commodities.

The defendants' employees in 1966, and for the period of time in question, voted in a proper election to be represented by a union. Subsequently, during bargaining with the defendants, the union representative expressed the opinion to the defendants that the employees in question, truck drivers, were not within Section 207(a) (1) of the Fair Labor Standards Act (FLSA) requiring overtime pay. The bargaining agreement (Defendants' Exhibit 10) provided that these employees were not to receive overtime. Thereafter, the employee-union members became dissatisfied with their failure to receive overtime pay. A grievance hearing was had, and it was agreed with the defendants that senior employees would be given all time possible over forty hours per week in order to increase their earnings.

Some of the employees were still dissatisfied and took their problems to the Department of Labor. The Department found that some employees were exempt and some were not. The Department of Labor was put on notice by these employees on or shortly before June, 1967. These two suits were filed in January, 1969. The defendants have raised the defense of laches to the Department's suit. The plaintiffs, in rebuttal, called one of the plaintiffs, Arthur Coleman, as a witness. Coleman's testimony was, in substance, similar to that offered by the defendants except that his testimony tended to indicate greater regularity in the various routes operated by the defendants.

## CONCLUSIONS OF LAW

There is no dispute as to the applicable law except as to its pertinency to the facts in the case at bar. Jiffy Poultry, Inc. admits that it employed the employees for whom overtime compensation is sought, and that each employee was subject to the Fair Labor Standards Act. Jiffy Poultry contends, however, that each employee for whom overtime compensation is sought is exempt from the overtime provisions of FLSA.

"Under the Motor Carriers Act of 1935 the Interstate Commerce Commission was accorded the power to 'establish reasonable requirements with respect to * * * qualifications and maximum hours of service of employees, and safety of operation and equipment' of common carriers by motor vehicle. 49 U.S.C.A. § 304(a) (1) [1]

[1]. These functions of the I.C.C. were transferred to the Secretary of Transportation. Title 49 U.S.C.A. 1655(e) (6) (C).

Three years later, when the Fair Labor Standards Act (FLSA) was adopted, Congress expressly provided that overtime provisions of the Act[2]

[2]. The pertinent section of the FLSA is 29 U.S.C.A. § 207(a) (1): 'Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.'

'shall not apply with respect to * * * any employee with respect to whom the Interstate Commerce Commission (now the Secretary of Transportation) has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 304 of Title

49' 29 U.S.C.A. § 213(b) (1) (1965).

In defining the interrelation between these statutory provisions, the Supreme Court has held that only those employees who were engaged in work which may affect the safety of the operation of motor vehicles were subject to the I.C.C.'s jurisdiction, and, consequently, with respect to them, their employees were exempt from the overtime requirements of the FLSA. United States v. American Trucking Associations, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940)" Blankenship v. Thurston Motor Lines, Inc., 415 F.2d 1193, 1195 (4th Cir. 1969).

"The Fair Labor Standards Act was designed 'to extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.' * * * Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." A. H. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 1098 (1945). (Citation omitted.)

■ The employer's burden of proof must be met by a clear and unmistakable showing of (the operative facts constituting an exemption) within the letter and the spirit of the act. A. H. Phillips, Inc. v. Walling, supra; Pugh v. Lindsay, 206 F.2d 43 (4th Cir. 1953).

■■ The threshold question in this litigation is whether or not the driving and loading activities of the plaintiffs are subject to regulatory power of the I.C.C. For it is the existence of such power, whether or not it is exercised, which governs the section 12(b) (1) exemption. Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44, 54

(1947). The I.C.C.'s jurisdiction over safety of operations is not determined by considerations as to whether the fraction of the employee's time devoted to safety-affecting work is substantial. Rather, it is the character of the employee's activities that determines the actual need for I.C.C. regulation. Levinson v. Spector Motor Service, 330 U.S. 649, 674, 67 S.Ct. 931, 91 L.Ed. 1158 (1946); Pyramid Motor Freight Corp. v. Ispass, 330 U.S. 695, 67 S.Ct. 954, 91 L.Ed. 1184 (1946). In *Levinson,* supra, the Supreme Court quotes from Levinson v. Spector Motor Service, 323 Ill. App. 505, 56 N.E.2d 142 (1944). The quoted portion appears in a footnote at page 656 of 330 U.S., at page 935 of 67 S.Ct., and reads in part as follows:

" * * * 'Considering the purpose of the Motor Carriers Act we believe that the true determinant is whether an employee performs *any* duties which substantially affect the safety of operation, rather than whether the duties affecting safety are substantial.' While it is true that many of the cases continue to speak of a 'substantial part' or 'substantial portion' when they are viewed as an entirety it is apparent that the activities must properly be tested as to what they accomplish rather than how much time they may consume." Yellow Transit Freight Lines, Inc. v. Balven, 8 Cir., 320 F.2d 495, 498–499 (1963).

Another early Supreme Court decision, Morris v. McComb, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) held that the I.C.C. had the power to establish qualifications and maximum hours of service with respect to all drivers and mechanics employed by a general cartage concern doing business entirely within the State of Michigan. The Court found that 3.65% of the total trips were in interstate commerce, in the normal course of the business, distributed generally throughout the year and performed indiscriminately by the firm's 43 drivers along with their intrastate services. While *Morris* bears an appealing factual resemblance to the case sub

judice, the decision in *Morris* is not here considered to be compelling. Despite numerous similarities, there are crucial factual distinctions in the cases. A firm in general cartage holds itself out to the public as being prepared to transport freight anywhere and at any time. The percentage of its business having an interstate nature is not finally determinative because it is subject to fluctuation as an incident of which certain of the firm's activities may, at a given time, bear a very substantial relationship to interstate commerce. Even as such a firm's interstate activities might periodically ebb, the potential remains, and should be regulated.

The defendant, Jiffy Poultry, is involved in cartage—as a private carrier—only as an incident of their poultry processing business. Defendants' reliance on Kerr v. Jeans, 193 F.2d 572 (5th Cir. 1952) is not to be ignored. In its decision, the Fifth Circuit applied *Morris* to a private carrier. However, the claim in Kerr v. Jeans was for overtime compensation for weeks during which the employee was not engaged in any interstate activity. In other weeks, however, he was substantially involved. In the case sub judice, the defendants' involvement in interstate cartage is both static and minimal. When measured by revenues, as was done in *Morris*, the deliveries in Florida constitute .23% of all deliveries in the course of defendant, Jiffy Poultry's, business. It should be noted at this time that defendant, Jiffy Poultry, employs 67 driver-loaders among whom this infinitesimal interstate traffic is allegedly divided. Assuming, arguendo, that the interstate work is so divided, each driver would spend .00343% of his time in interstate commerce. Yet, it is not the amount of time spent, but the substantiality of the effect of these efforts which we are to measure. Levinson v. Spector Motor Service, supra. Courts have, on previous occasions, looked to the safety-affecting aspects of other employment, and in Foremost Dairies Inc. v. Ivey, 204 F.2d 186 (5th Cir. 1953), found that seven of eight plaintiffs who were employed in

commerce and periodically called upon to load trucks in interstate commerce, were not proven to have been substantially involved in safety-affecting operations. The eighth plaintiff was held to have been within the I.C.C.'s jurisdiction because of the discretion exercised in his supervision of the loading. In Wirtz v. C. and P. Shoe Corporation, 336 F.2d 21 (5th Cir. 1964), employees primarily occupied in other work, who intermittently helped as truck drivers came within the *de minimis* rule of Pyramid Motor Freight Corp. v. Ispass, supra, and recovery was allowed. In Opelika Royal Crown Bottling Co. v. Goldberg, 299 F.2d 37 (5th Cir. 1962), an employee primarily occupied within the warehouse, who was called upon sporadically to assist with loading of soft drink delivery trucks came within the *de minimis* rule. Looking beyond the minimal time involved in the Florida deliveries by Jiffy Poultry, Inc. to the safety-affecting aspects, these, because of the light weight loads, are also minimal, as are the trips themselves, involving as they do, deliveries to a community located on the Alabama-Florida border.

Although the *de minimis* cases cited hereinabove rely, in their holdings, upon the fact that the affected employees were reassigned from other types of work for the performance of their occasional and minimal efforts affecting safety of interstate commerce, the businesses in these cases were engaged to a substantial degree, in interstate commerce; and so, consequently were their regular drivers and loaders. In the case at bar the employees are regular, full-time drivers and loaders engaged in intrastate deliveries. Their occasional and minimal involvements with interstate commerce are not rendered more substantial because of their experience in this work or because reassignment was unnecessary.

In addition to their Florida deliveries, defendants allege other interstate activities, to wit:

(A) Loading poultry products to be taken to Florida.

(B) Loading offal to be taken to Mississippi in the trucks of another firm.

(C) Trips to warehouse to pick up frozen poultry shipped from out of state.

(D) Trips to warehouse to pick up boxes and marked cartons shipped from out of state.

(E) Sales to ships and ship chandlers at the docks.

(F) Trips to the Mobile Farmers' Market to guide out-of-state trucks to the Jiffy Poultry plant.

The court finds the loading operations conducted by the defendants are not of a safety-affecting nature, and require no discretion on the part of the loader. The loading of poultry for delivery was done on a first in—last out basis, and with regard to safety in only a most general way. Yellow Transit Freight Lines, Inc. v. Balven, 320 F.2d 495, 499 (8th Cir. 1963). Also, with regard to the loading of offal, there is little room for the exercise of discretion. Foremost Dairies, Inc. v. Ivey, supra; Pyramid Motor Freight Corp. v. Ispass, supra.

The defendant did not transport these commodities interstate, however, defendant relies upon Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460 (1943); Opelika Royal Crown Bottling Company v. Goldberg, supra; Shew v. Southland Corporation, 370 F.2d 376 (5th Cir. 1966); and Galbreath v. Gulf Oil Corporation, 413 F.2d 941 (5th Cir. 1969), to support its allegations that the trips to the warehouses were in interstate commerce. The court is not persuaded that such reliance is well placed. The cases cited involve further distribution from a central receiving point. In the case sub judice, the shipments were directed to Jiffy Poultry, were the property of Jiffy Poultry, and were placed in warehouse space leased to Jiffy Poultry. It is difficult to deny that these products had reached their destination, and to assert that mere transferral among Jiffy Poultry's facilities in Alabama in a continuation of interstate commerce.

While the deliveries by defendant to ships and ship chandlers appear to be in interstate commerce, and therefore must be added to the .23% of defendant's business which is of an interstate nature, there is no satisfactory evidence to indicate how substantial these maritime sales might be. It is also possible that the "guided tours" from the Farmers' Market to Jiffy Poultry's plant might affect safety in what is assuredly interstate commerce. However, these activities might be found to be de minimis. Again, there is a lack of sufficient evidence to substantiate the extent and the safety-affecting nature of the work of these guides.

It is well settled in the law that section 13 exemptions are to be narrowly construed, and the burden of proof falls to the claimant of the exemption.

"Any exemption for such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard for the plain meaning of the statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." A. H. Phillips, Inc. v. Walling, supra, 65 S. Ct. at 808, 89 L.Ed. at 1098; Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 80 S.Ct. 453, 4 L.Ed.2d 393, 396 (1961); Gatlin v. Mitchell, 287 F.2d 76 (5th Cir. 1961).

In light of the strict construction accorded section 13 of FLSA, the court does not feel constrained to allow an exemption which would deprive 67 working men of overtime compensation on the basis of a minimum of evidence of interstate activity which is minimal in its scope and minimal in its nature.

In Civil Action No. 5337–69, Arthur Coleman et al. v. Jiffy June Farms, Inc., et al., the plaintiffs seek liquidated damages. The court is satisfied that the act or omission giving rise

to the defendants' action was in good faith and he had reasonable grounds for believing that his acts or omissions were not in violation of the Fair Labor Standards Act of 1938, as amended, therefore, liquidated damages are denied.

In the same case, attorney fees have been requested. The question of attorney fees is left open for the attorneys for said parties to present to the court evidence as to a reasonable attorney fee, which should be done on or before February 15, 1971.

In Civil Action No. 5342–69, George P. Shultz, etc. v. Jiffy June Farms, Inc., et al., injunctive relief is sought which is granted and attached to this order and made a part hereof.

The parties have informed the court that if a decree is rendered against the defendants they will be able to reach an agreement as to the amount due defendants' employees in each of the cases. It is therefore,

Ordered, adjudged, and decreed that the court finds for the plaintiffs and against the defendants in each of the respective cases, and the parties are to file with the court an agreed judgment as to the amounts due on or before February 15, 1971.

Costs are taxed against the defendants.

## INJUNCTION

The defendants are hereby enjoined and restrained as follows:

(1) From withholding the payment of back pay found to be due by this court for the defendants' employees for three years prior to the commencement of this cause as authorized by section 17 of the Fair Labor Standards Act of 1938 as amended 29 U.S.C. § 201 *et seq.*, and section 6 of the Portal to Portal Act of 1947 as amended 29 U.S.C. § 255, and

(2) From violating the provisions of section 15(a) (2) of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*