Ted W. KIMBALL et al.

v.

The GOODYEAR TIRE AND
RUBBER COMPANY.

Civ. A. No. B–79–73–CA.

United States District Court,
E. D. Texas,
Beaumont Division.

Dec. 23, 1980.

Alto V. Watson and Kaye Sexton, Dryden, Watson, Grossheim & Jamail, Beaumont, Tex., for plaintiffs.

John S. McEldowney, Mills, Shirley, McMicken & Eckel, Galveston, Tex., for Goodyear Tire and Rubber Co.

## MEMORANDUM OPINION [1]

JOE J. FISHER, District Judge.

The plaintiffs in this case are thirty-nine truck drivers employed by Goodyear Tire and Rubber Company (Goodyear), who haul various petroleum products to and from Goodyear's Beaumont, Texas, plant. The plaintiff's are suing Goodyear for overtime under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219.

This Court has jurisdiction by virtue of 29 U.S.C. § 216(b). Venue is proper in the Eastern District of Texas. *See* 28 U.S.C. § 1391(b) and (c).

Plaintiffs assert their right to overtime pay at time and one half regular pay for those hours worked above forty in any work week. *See* 29 U.S.C. § 207(a)(1). The defendant claims that it is exempt from the overtime requirements of the FLSA by virtue of 29 U.S.C. § 213(b)(1) ("Motor Carrier Act Exemption"). There is no dispute that, but for the claimed exemption, Goodyear is covered by the FLSA. The claimed exemption states, in pertinent part:

§ 213

(b) The provisions of section 207 of this title shall not apply with respect to

(1) any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 304 of Title 49 . . . .

29 U.S.C. § 213(b)(1). Section 304 of Title 49, in turn, states:

§ 304

(a) It shall be the duty of the Commission—

.    .    .    .    .

1. This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Rule 52(a), F.R.Civ.P.

(3) To establish for private carriers by motor vehicle, if need therefore is found, reasonable requirements to promote safety of operations, and to that end, prescribe qualifications and maximum hours of service of employees, and standards of equipment . . . .

49 U.S.C. § 304. It is not disputed that Goodyear would be a "private carrier by motor vehicle" as defined by 49 U.S.C. § 10102(13),[2] rather than either a "common carrier" or a "contract carrier." *See* 49 U.S.C. § 10102(10)–(12). The dispute is whether Goodyear transports property "interstate."[3]

Goodyear operates a polyisoprene (synthetic rubber) plant in Beaumont, Texas. The plant also manufactures resins. A necessary ingredient for the manufacture of polyisoprene is crude isoprene. Goodyear obtains the crude isoprene from several nearby petrochemical companies, including Shell, Arco, Gulf, Exxon, and Monsanto. These companies obtain foreign and domestic crude oil and process it into various streams, one of which is crude isoprene. Goodyear has contracted with these crude oil refiners to obtain quantities of crude isoprene, which Goodyear processes by distillation to yield pure isoprene and a by product, raffinate. Pursuant to some of the Goodyear contracts, some of the raffinates are transported back to the crude oil refiners, and they are further processed and blended to become gasoline.

Goodyear rents a fleet of tank trucks from Ryder to transport the crude isoprene and raffinates to and from the Goodyear plant. The trucks are maintained by Ryder. Goodyear hired the plaintiffs to drive these rented tank trucks. The plaintiffs are not unionized, and do not have contracts with Goodyear. The drivers are assigned routes based on seniority, and hold these routes for a specified period of time. There was evidence that Goodyear could unilaterally assign any driver to any route at any time, but this was not its practice. Goodyear paid the plaintiffs time and one-half for those hours in excess of forty per work week until June, 1975. In June, 1975, Goodyear changed its policy and ceased to pay overtime. Evidence adduced at trial indicates that Goodyear changed its policy based on information received from other area truck lines, and in-house and outside counsel. Goodyear claims that it believes it is exempt from the FLSA because it is "subject to the jurisdiction of *numerous* federal agencies because of being in interstate commerce." Defendants Post-trial brief at 7. (Emphasis in original).

The Goodyear drivers transported crude isoprene and raffinates both interstate and intrastate, although the wholly intrastate hauls clearly predominated. The evidence indicates that less than one percent of the hauls were to or from Louisiana terminals, while the rest, over ninety-nine percent, were to or from points within Texas. Specifically, during the years 1976 to 1979, the drivers made a total of 49,329 hauls. Only seventy-one were to or from Louisiana. The interstate trips thus represented 0.1437% of the total hauls. Of the total trips, seventeen were to or from the Stans-Trans terminal in Texas City, carrying products destined for France.

## I  THE EXEMPTION

### A

■  The burden of proving an exemption to the FLSA rests on the employer claiming·

---

**2.**  Section 10102(13) states:

"motor private carrier" means a person, other than a motor carrier, transporting property by motor vehicle when—

(A) the transportation is as provided in section 10521(a)(1) and (2) of this title;

(B) the person is the owner, lessee, or bailee of the property being transported; and

(C) the property is being transported for sale, lease, rent, or to further a commercial enterprise.

Section 10521(a) (which is the same as the prior 49 U.S.C. § 303 (repealed, Pub.L. 95–473, § 4(b), Oct. 17, 1978, 92 Stat. 1466), covers transportation by motor carrier:

between a place in—(A) a State and a place in another State (B) a State and another place in the same State through another state . . .

Subsections (a)(1)(C), (D) and (E) and (a)(2) relate to foreign countries and reservations.

**3.**  See n.2 *supra.*

the exemption. *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206, 86 S.Ct. 737, 747, 15 L.Ed.2d 694 (1966); *Marshall v. Sundial Associates*, 588 F.2d 120, 122 (5th Cir. 1979). Here, Goodyear must prove that its drivers are subject to the qualifications and maximum hours established by the Secretary of Transportation (the Secretary). 29 U.S.C. § 213(b)(1). The Secretary can regulate Goodyear's drivers under 49 U.S.C. § 304(a) if Goodyear is a "private carrier," that is, transports property interstate within the meaning of 49 U.S.C. §§ 10102(13) and 10521(a)(1)–(2).

■ Goodyear argues, first, that all of the deliveries are interstate because the products originate from points outside Texas and are ultimately destined for places outside of Texas. Goodyear would like to avail itself of the proposition that if a product is moving in interstate commerce, the Secretary has the power to regulate a purely intrastate segment of the interstate movement. *See Galbreath v. Gulf Oil Corp.*, 413 F.2d 941 (5th Cir. 1969). The purely intrastate segments are not part of interstate commerce, however, if the product comes to rest within the state. *See id.* at 944. Questions of " 'movement,' cessation of movement, interruption of movement are each factual matters . . . ." *Kline v. Wirtz*, 373 F.2d 281, 282 (5th Cir. 1967). In the case at bar, the products involved clearly came to rest at both ends of the intrastate movements by reason of the processing. The crude isoprene shipments from the Texas refineries to Goodyear were not part of a larger movement interstate because the crude isoprene did not exist as such until the refineries processed the crude oil into various hydrocarbon streams. Similarly, the pure isoprene and raffinates did not exist until Goodyear produced them by distillation. The raffinates returned to the refineries were again processed and blended to become gasoline before any further interstate movement. "This processing is sufficient to break the continuity of the transportation, thus precluding a holding that there is an interstate movement." *Goldberg v. Faber Industries, Inc.*, 291 F.2d 232, 234 (7th Cir. 1961); *see Kline v. Wirtz*, 373 F.2d 281, 282 (5th Cir. 1967).

There is evidence that Goodyear drivers made seventeen trips to the Stans-Trans terminal in Texas City, where the isoprene was loaded aboard tankers bound for France. These trips represented 0.034% of the total trips made from 1976 to 1979. Even assuming that the isoprene did not "come to rest" at the Stans-Trans terminal, the Court finds, for the reasons discussed in part B that such a small percentage of interstate transportation does not render Goodyear subject to the jurisdiction of the Secretary of Transportation.

The cases cited by Goodyear to support their contention are not on point because they involved the temporary storage of a single product for distribution, and there was a continuous movement interstate, interrupted by a change in carrier or bulk storage for a short period of time. *See, e. g., Baird v. Wagoner Transportation Co.*, 425 F.2d 407, 410 (6th Cir.), *cert. denied*, 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970); *Shew v. Southland Corp.* (Cabell's Dairy Division) 370 F.2d 376 (5th Cir. 1966).

### B

The more difficult question is whether the Louisiana trips made the transportation interstate. The evidence introduced showed that the thirty-nine plaintiffs made 49,392 trips during the years 1976 to 1979. Seventy-one trips were made out of state, or 0.14% of all trips. Twenty-nine drivers made no interstate trips. In addition, seventeen trips were made to the Stans-Trans terminal involving export of isoprene to France, raising the maximum number of "interstate" trips to eighty-eight out of 49, 329, or 0.17%. Divided among the thirty-nine plaintiffs, the percentage is 0.004% average interstate travel for each employee.

Goodyear relies on *Morris v. McComb*, 332 U.S. 422, 68 S.Ct. 131, 92 L.Ed. 44 (1947) for its contention that the Secretary of Transportation has power to establish qualifications and maximum hours of service for all drivers, even though 99.83% of the trips were wholly within Texas. This Court is

not persuaded. In *Morris v. McComb*, the defendant was a common carrier who operated a general cartage business. Four percent of the transportation was interstate. *Id.* at 427, 68 S.Ct. at 133. In addition, thirty-five percent of the hauling was shipped within steel plants, and the products hauled were ultimately sold in interstate commerce. The Supreme Court relied on the fact that

> these strictly interstate trips were distributed generally throughout the year and their performance was shared indiscriminately by the drivers and was mingled with the performance of other driving services rendered by them otherwise than in interstate commerce. These trips were thus a natural, integral and apparently inseparable part of the common carrier service of the petitioner and of his drivers.

*Id.* at 433, 68 S.Ct. at 136.

The facts of the present case lead to the opposite conclusion. Less than one percent of the trips were in interstate commerce, as compared to four percent in *Morris v. McComb*. In *Morris v. McComb*, one or more interstate trips were made weekly, and on the average, twenty-four percent of the drivers made the interstate trips each week. Most of Goodyear's drivers, on the other hand, never made any interstate trips. Additionally, the defendant in *Morris v. McComb* was a common carrier and was required by virtue of his status to take interstate business. The interstate trips were randomly assigned in *Morris v. McComb*, but Goodyear's practice is to assign routes to drivers based on seniority.

The instant case is governed by *Coleman v. Jiffy-June Farms, Inc.*, 324 F.Supp. 664 (S.D.Ala.1970), *aff'd*, 458 F.2d 1139 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972), and *Wirtz v. C & P*

*Shoe Corp.*, 336 F.2d 21 (5th Cir. 1964). In *Jiffy-June Farms*, the defendant-employer hired drivers to deliver poultry products in Alabama and Florida. The Florida deliveries were 0.23% of all deliveries, even though they were made two to three times each week. The court concluded that the interstate portion of the drivers' work was infinitesimal and thus did not exempt the employer from the FLSA. 324 F.Supp. at 669.

The facts in the present case are more persuasive than in *Jiffy-June Farms*. The interstate trips here are 0.17%, as opposed to 0.23%. In *Jiffy-June Farms*, the trips were made two to three times weekly; here, on the average only once every three weeks. Thus, Goodyear is not exempt from the FLSA by virtue of 29 U.S.C. § 213(b)(1).[4] *But see Brennan v. Schwerman Trucking Co. of Virginia, Inc.*, 540 F.2d 1200, (4th Cir. 1976); *Crooker v. Sexton Motors, Inc.*, 469 F.2d 206 (1st Cir. 1972).

## II THE STATUTE OF LIMITATIONS

Section 255 of Title 29 (Portal to Portal Act) provides that an action under the FLSA for unpaid overtime compensation "may be commenced within two years after the cause of action accrued ... except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued ...." The standard in the Fifth Circuit for determining what is a willful violation was enunciated in *Coleman v. Jiffy-June Farms, Inc.*, 458 F.2d 1139, 1142 (5th Cir.), *cert. denied*, 409 U.S. 948, 93 S.Ct. 292, 34 L.Ed.2d 219 (1972):

> [An] employer's decision to change his employees' rate of pay in violation of FLSA is "wilful" when, as in this case, there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might

4. Goodyear also argues that it is exempt from the FLSA because its drivers transport hazardous materials. While it is true that the Secretary of Transportation has power to regulate transportation of hazardous materials pursuant to 49 U.S.C. §§ 1801–1812, it does not follow that that power exempts Goodyear from the FLSA. Section 213(b)(1) exempts "any em-

ployer with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours *pursuant to the provisions of Section 304 of Title 49* ...." The exemption, on its face, does not apply to employees with respect to whom the Secretary has the power to regulate under § 1801 et seq.

violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?

The Fifth Circuit has also stated that "actual awareness of the law is unnecessary to establish willfulness. Knowledge is imputed ...." *Marshall v. A & M Consolidated Independent School District*, 605 F.2d 186, 189 (5th Cir. 1979), *see Brennan v. Heard*, 491 F.2d 1, 3 (5th Cir. 1974); *Brennan v. J. M. Fields, Inc.*, 488 F.2d 443 (5th Cir. 1973), *cert. denied*, 419 U.S. 881, 95 S.Ct. 146, 42 L.Ed.2d 121 (1974).

Goodyear asserts that its violations were not wilful because it checked with in-house and outside counsel, and with other similarly situated employers and manufacturing groups. Additionally, Goodyear argues that the violations were not wilful because the Secretary of Transportation visited the plant and "asserted its jurisdiction."[5]

Under the standard used in the Fifth Circuit, it is clear that the violations were "wilful." The testimony of Mr. Barga, the Goodyear employee relations manager, indicates that the decision not to pay overtime was a deliberate decision made by Mr. Barga, Mr. Sontag, and Mr. Conner, that the exemption applied. Thus the three year statute of limitations applies.

### III LIQUIDATED DAMAGES

Section 216(b) of the FLSA allows employees to recover "their unpaid overtime compensation ... and in an additional equal amount as liquidated damages." Section 260 of Title 29 provides, however, that:

if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages ....

The standard applied in the Fifth Circuit is stated in *Barcellona v. Tiffany English Pub*, 597 F.2d 464 (1979):

We understand the language of [29 U.S.C. § 260] to impose upon the employer who would escape the payment of liquidated damages a plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.

*Id.* at 468.

This Court is persuaded that Goodyear acted in good faith and with reasonable grounds to believe that the exemption applied. The evidence showed that Goodyear acted on the advise of counsel an accordance with what it viewed as local industry practice. The determination that the Secretary does not have power to regulate the hours and qualifications of Goodyear's drivers is a factual one, and Goodyear should not be penalized for its error.

---

**5.** Evidence at trial indicates that the Secretary did send representatives to the plant, but the

nature of their visits was not clearly established. *See also* n. 4, *supra*, in this regard.